**EASCO, INC., et al., Plaintiffs–Appellants,**

**v.**

**Charles E. CARDWELL, Commissioner of Revenue, State of Tennessee, Defendant–Appellee.**

Supreme Court of Tennessee, at Nashville.

Oct. 26, 1992.

Charles A. Trost, Waller, Lansden, Dortch & Davis, Nashville, for plaintiffs-appellants.

Charles W. Burson, Atty. Gen. & Reporter, Daryl J. Brand, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

REID, Chief Justice.

This case presents an appeal from the judgment of the chancery court denying the claim of the appellant Easco, Inc. for a refund of corporate excise taxes and interest paid under protest. The record supports the judgment of the trial court.

Easco seeks to recover corporate excise taxes paid pursuant to an assessment by the Department of Revenue on gains from the sale of assets in 1986. *See* T.C.A. § 67–4–801 *et seq.* The determinative issue is whether the assets were sold by Easco and the proceeds distributed to its shareholders, in which event the gains were taxable, or the assets were distributed by Easco to its shareholders and then sold by the shareholders, in which event the gains would not be subject to the tax. T.C.A. § 67–4–805.

Easco was a Delaware corporation, engaged in the business of manufacturing pickup truck bed liners, with its principal place of business in Mt. Juliet, Tennessee. The majority of Easco's stock, 80.12 percent, was owned by Midcoast Company. The remaining 19.88 percent was owned by various individual shareholders. All of the stock in Midcoast was owned by Eagle American Corporation, which, in turn, was owned 73.5 percent by Walter W. King, 6.5 percent by his wife, Katherine A. King, and 20 percent by Joseph R. Elliott. Walter W. King was chairman of Easco, president of Midcoast and Eagle American, and a director in all three corporations. Elliott was president of Easco, vice-president of Midcoast and Eagle American, and a director in all three corporations. King's son-in-law, James R. Smith, was vice-president, secretary, and general counsel of Easco, and a director in all three corporations.

In November, 1986, King reached "a handshake deal" with Lancaster Colony Corporation for the sale of Easco's corporate stock for $5.7 million. However, Lancaster's attorney advised Smith, who was representing the seller, that Lancaster's proposal was to buy Easco's assets, not its stock, and submitted a draft of an "Agreement for Purchase of Assets" which set forth the details of the proposed purchase of assets.

On December 2, 1986, the directors of Easco adopted a resolution for the liquidation and dissolution of the corporation pursuant to § 337 of the Internal Revenue Code (26 U.S.C. § 337). The resolution was approved by Easco shareholders and a similar resolution was adopted by the directors and approved by the shareholders of Midcoast and Eagle American.

At Lancaster's request, the closing of the sale was postponed from the agreed date of December 26 to December 29.

On December 27, Smith prepared and King, as chairman, and Smith as secretary, of Easco, executed a document designated "assignment," whereby Easco purported to transfer to Walter W. King, Katherine A. King, and Joseph R. Elliott all of Easco's assets, except real property and motor vehicles (titles to which must be recorded), which property "assigned" is claimed to be equal to 80.12 percent of the total value of Easco. The asserted percentage of value, 80.12, was the same percentage as the percentage of stock in Easco owned by those three shareholders indirectly by their ownership of stock in Eagle American. The shareholders did not endorse or surrender their stock certificates. The instrument recites no consideration. At the same time the "assignment" was executed, the Kings and Elliott executed another instrument, designated "appointment," which purported to designate Easco as their attorney in fact to convey to Lancaster the assets transferred to them by Easco's "assignment." The other owners of Easco stock were not advised of the partial "assignment." The record reflects no business or personal reason for those instruments except to avoid the payment of Tennessee excise tax.

On December 29, the sale of assets to Lancaster was closed. The closing agree-

ment, "Agreement for Purchase of Assets," signed on the date of closing, recited that Easco was the seller of the property conveyed and contained no mention that Easco was acting as agent for any shareholder. To the contrary, Easco represented in the agreement that it had "full and unrestricted legal and equitable title to all assets" subject to the sale, which included the assets which had been the subject of the previous "assignment" by Easco to the Kings and Elliott. Also, contrary to the provisions of the "assignment," the agreement stated that Midcoast owned 80.12 percent (40,685.2 shares) of Easco's outstanding stock and represented that no dividend, distribution, or redemption had occurred with regard to Easco's stock.

Upon the closing, Lancaster delivered a check payable to Easco in the amount of $4,560,000 and a promissory note payable to Easco in the amount of $1,140,000. Easco, acting by Joseph R. Elliott, issued a receipt for the check and executed an assignment of the note to the shareholders. That check and note were then returned to Lancaster in exchange for checks and notes payable to each Easco shareholder, including those who owned the 19.88 percent interest, representing their respective interests in the proceeds of the sale.

Easco's federal tax return reported that Easco sold 100 percent of its assets to Lancaster and distributed the proceeds of the sale, cash and promissory notes, to its shareholders. However, Easco reported on its Tennessee excise tax return that it sold 19.88 percent in value of its assets to Lancaster, and distributed 80.12 percent in value to three of its shareholders.

The appellant's position is that the ownership in all assets owned by the corporation, except real property and motor vehicles, was transferred to Walter W. King, Katherine A. King, and Joseph R. Elliott by the "assignment" and that ownership in that property was transferred by those shareholders to Lancaster. The Chancellor accepted the Commissioner's position that the "assignment" represented a spurious transaction and dismissed Easco's suit.

The determinative question has been considered by the Court in two reported cases, *Dattell v. Tidwell*, 512 S.W.2d 550 (Tenn. 1974) and *Tidwell v. Berke*, 532 S.W.2d 254 (Tenn.1975). The taxpayer prevailed in *Dattell*, the Commissioner prevailed in *Berke*. The decision in both cases turned on the "crucial question of fact ... whether the sale was made by the corporation itself or by the stockholder." *Berke*, 532 S.W.2d at 259. In *Dattell*, the case was before the Court on writ of error, on which procedurally the Court was required to treat as proven the allegations that on June 3 the corporation was liquidated and all its assets were distributed to the shareholder pursuant to a resolution adopted by the directors and shareholder and that on June 4 the shareholder sold the property to the purchaser. The Court found "necessarily" the sale was by the shareholder rather than the corporation. *Dattell*, 512 S.W.2d at 551. However, in *Berke*, the Court found the sale was made by the corporation. The Court based its rejection of the taxpayer's claim in that case upon the findings that there had been no actual distribution of assets to the shareholders; the plan of liquidation had not been "finalized" and executed, but was, at the time of the sale, "contingent" and subject to withdrawal or modification; the notice of dissolution filed with the Secretary of State after the sale indicated that the corporation on the date of the filing was the owner of the proceeds of the sale then being distributed to the shareholders; and the questionable practice of using the corporation to pass legal title even though, under the taxpayer's contention, equitable title in the property had passed to the shareholder. *Berke*, 532 S.W.2d at 257, 261.

The determinative factual issue, whether the sale was by the corporation or the individual shareholder, is not a matter of form over substance, unless it should be conceded that Tennessee's statutory plan for the taxation of income is form over substance. At the time of the transactions in this case, Internal Revenue Code § 337 provided, in essence, that where a liquidat-

**916**

ing corporation distributed its assets within 12 months after adopting a plan of liquidation, gains on the sales or exchanges of such property within the 12–months period, for federal tax purposes, would not be taxable to the corporation. 26 U.S.C. § 337 (1982). The purpose of § 337 was to avoid taxation of the gains to the corporation and again to the shareholders upon distribution. An important difference between the federal and state plans of taxation of gains on the sale of assets was that the Tennessee statutes imposed a tax on gains realized from the sale of assets by corporations but not by individuals. Consequently, even though the statute used "federal taxable income" as the base for determining "net earnings" subject to taxation, the statute required that "[g]ains not recognized pursuant to 26 U.S.C. § 337" be included in net earnings subject to taxation. T.C.A. § 67–4–805. Section 337 gains were, as stated above, the gains realized by the corporation from the sale of assets pursuant to a plan of liquidation. The significant point is that under federal law at the time of this case, gains realized by a corporation from the sale of assets pursuant to a plan of liquidation were not taxable to the corporation, while under Tennessee law gains realized from the sale of assets pursuant to a plan of liquidation were taxable to the corporation. Consequently, if the sale was by the corporation, notwithstanding other circumstances, the gains were subject to state tax.

It should be noted that under current law the gains realized on the sale of assets in this case, whether sold or distributed by Easco, would be taxable. The federal tax code has been amended to provide that gains on assets sold *or distributed* by a corporation pursuant to a plan of liquidation are taxable income. 26 U.S.C. § 336(a) (Supp.1992). Under T.C.A. § 67–4–805, "federal taxable income" remains the base for determining "net earnings." Consequently, net earnings subject to the excise tax now includes gains on transactions previously not subject to that tax.

The evidence in the case before the Court does not support the contention that the sale of any part of the corporate assets was made by the shareholders. No further analysis of the circumstances of this case is necessary for the conclusion that the "assignment" and "appointment" are evidence of nothing more than a poorly concealed sham that had no purpose other than the avoidance of tax.

The judgment of the Chancery Court is affirmed, and the case is remanded for further proceedings pursuant to T.C.A. § 67–1–1803(d). Costs will be borne by the appellants.

O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

DROWOTA, J., not participating.