# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**May 28, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

LITTLE SIX CORPORATION, )
)
    Plaintiff/Appellee, )
)    Appeal No.
VS. )    01-A-01-9806-CH-00285
)
RUTH JOHNSON, COMMISSIONER )    Davidson Chancery
OF REVENUE OF THE STATE OF )    No. 95-2556-II
TENNESSEE, AND THE )
DEPARTMENT OF REVENUE OF THE )
STATE OF TENNESSEE, )
)
    Defendant/Appellant. )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR

G. MICHAEL BURKE
148 Bristol East Road
Bristol, Virginia 24201

EVERETT B. GIBSON
1010 Cotton Exchange Building
65 Union Avenue
Memphis, Tennessee 38173-0351
    Attorneys for Plaintiff/Appellee

PAUL G. SUMMERS
Attorney General & Reporter

M. TY PRYOR
Assistant Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37243
    Attorney for Defendant/Appellant

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

The trial court ordered the Department of Revenue to refund $113,580 to the plaintiff corporation, holding that as the surviving entity in a corporate merger, it was entitled to use tax deductions and tax credits that had been acquired prior to the merger by the non-surviving corporation. We reverse the court's order in regard to the loss carryover deductions, and affirm its order on the industrial tax credits.

## I. A Corporate Merger

Little Six Corporation (Little Six) is a privately-held company, chartered in Virginia for the purpose of mining coal in that state. In 1987, the six shareholders in Little Six began a new business to mine and process silica in Hawkins County, Tennessee. They incorporated the new business in this state under the name Short Mountain Silica, and Little Six made a substantial investment in heavy equipment to start the operation.

Little Six financed most of the start-up expenses for Short Mountain with loans made from profits generated by its coal-mining operation. But as its coal reserves dwindled, the owners of Little Six decided to wind down the coal-mining operation and to concentrate on silica. On December 31, 1989, Little Six merged with Short Mountain through a statutory merger, with Little Six being the surviving corporation. One advantage of the merger was that it enabled Little Six to wipe $5.2 million in loans off its books.

After the merger, Short Mountain ceased to exist as a legal entity, though its operations in Tennessee continued to use the same name. Little Six stopped mining coal, and sold or leased all its coal mining equipment, for the most part to sister companies owned by its shareholders. The last equipment lease terminated in 1995, and the last piece of equipment was sold in 1996. Prior to the

1989 merger, Short Mountain generated substantial net operating losses. The sand mining business became profitable and self-supporting after the merger.

In 1994, the Department of Revenue audited Little Six's 1993 franchise and excise tax return, and issued a deficiency assessment of $53,380. Little Six paid the assessment, and filed a claim for a refund, which was denied. On October 18, 1995, Little Six filed suit in the Chancery Court for Davidson County asking for the refund on its 1993 taxes

In 1995, the Department of Revenue audited Little Six's 1994 franchise and excise tax return, and issued a deficiency assessment of $60,200. Again, Little Six paid the assessment and filed a claim for a refund. The Commissioner did not act on the 1995 claim for refund within six months of its submission, so on August 27, 1996, Little Six filed another suit. The two suits were consolidated, and went to trial on February 19, 1998.

At trial, Little Six argued that it was entitled to the loss carryovers and industrial machinery credits that the Department of Revenue had disallowed. The Chancellor agreed, and ordered the Department to make the required refunds. This appeal followed.

## II. The Loss Carryovers

At the outset, we must note that there is no dispute as to the facts of this case, but only as to the chancellor's conclusions of law. Such conclusions are reviewed de novo, and are not entitled to a presumption of correctness on appeal. Tenn. R. App. Proc. 13(d). *Tenn. Farmers Mutual Ins. Co. v. American Mutual Liability Ins. Co.,* 840 S.W.2d 933 (Tenn. App. 1992).

The State sought to tax the net earnings of the plaintiff corporation in accordance with the Excise Tax Law, Tenn. Code Ann. § 67-4-801, et seq. The

starting point for determining net earnings for purposes of the excise tax is federal taxable income. This figure is then adjusted by several variables, including, where appropriate, the deduction of net losses from previous years. The portion of the Act that defines net income, including the provision for loss carryovers, is Tenn. Code Ann. § 67-4-805 (Acts 1976, ch. 537, § 29), the current version of which reads in pertinent part:

> (b)(2) There shall be subtracted from the federal taxable income:
>
> . . .
>
> (C)(I) Any net operating loss incurred for fiscal years ending on or after January 15, 1984, "net operating loss" being defined as the excess of allowable deductions over total income allocable to this state for the year of the loss, and which may be carried over and allowed in succeeding tax years until fully utilized in the next succeeding taxable year or years in which the taxpayer has net income, but in no case for more than fifteen (15) years after the taxable year in which the net operating loss occurs...

The Department of Revenue denied Little Six Corporation the use of the losses incurred by Short Mountain Silica, relying upon its Revenue Rule 1320-6-1-.21(2)(d), which had been promulgated in 1974:

> Each corporation is considered a separate entity; therefore, in the case of mergers, consolidations, etc. no loss carryovers incurred by the predecessor corporation will be allowed as a deduction from net earnings on the tax return of the successor corporation.

Little Six claims that the regulation is invalid, because it enlarges the scope of the taxing statute beyond the mandate of the legislature. See *Covington Pike Toyota v. Cardwell*, 829 S.W.2d 132 (Tenn. 1992). However we believe that in creating the regulation, the Department had acted within its authority "to promulgate rules and regulations that are not inconsistent with the taxing statutes." Tenn. Code Ann. § 67-1-102. In particular, we agree with the Department that the legislature's use of the singular form in the phrase "in the next succeeding year or years in which *the taxpayer* has net income," (emphasis added) indicates that it intended that the entity

- 4 -

enjoying the tax benefit flowing from an operating loss be the same one that suffered the loss.

The trial court reached behind the corporate structure that Little Six chose to create, and explicitly adopted the "continuity of business enterprise" test, in order to find that Little Six was entitled to offset its profits by Sand Mountain's losses. That test, first described in *Lisbon Shops v. Koehler*, 353 U.S. 382 (1957), allows the loss-carryover deduction, regardless of corporate re-organization, if substantially the same business is responsible for both the losses and the profits that it seeks to offset.

However, rulings of the federal courts in regard to federal tax laws are not binding on Tennessee courts when they are called upon to interpret Tennessee tax laws. See *Tidwell v. Berke*, 532 S.W.2d 254 (Tenn. 1975). Some state courts have adopted the continuity of business test, but to the best of our knowledge it has never before been followed in this state, and there is no evidence that the legislature intended its adoption when it enacted the Excise Tax Law. Revenue Rule 1320-6-1-.21(2)(d) was in effect prior to the enactment of Tenn. Code Ann. § 67-4-805. If the legislature objected to the rule, it could have easily drafted the statute in such a way as to render it inoperative, but it did not do so.

The Chancellor additionally relies upon the statutes dealing with corporate mergers, specifically Tenn. Code Ann. § 48-21-108, which states that the property and the liabilities of each party to a merger are vested in the surviving corporation. However, putting aside for the moment the question of whether prior losses are considered to be "property" under that statute, we must note that the purposes of the franchise and excise tax statutes are distinct from those of the corporate merger statutes, and they should not be interpreted in pari materia. See *Parkridge Hospital v. Woods*, 561 S.W.2d 754 (Tenn. 1978). *Richard's Auto City v. Director, Division of Taxation*, 659 A.2d 1360 (N.J. 1995).

We acknowledge that if the situation had been reversed, that is, if Sand Mountain had absorbed Little Six rather than the other way around, then there is no doubt that Sand Mountain would have been entitled to the deduction. But we do not agree with the argument that Little Six is thus being penalized because of a relatively minor technical distinction. The shareholders of Little Six chose to merge it with Sand Mountain, and to terminate Sand Mountain's corporate existence. No doubt they had sound business reasons for wanting to structure the merger as they did. But we are not obligated to interpret Tennessee's tax laws in such a way as to minimize their impact on corporations that choose to do business in this state. Rather, it is for corporations to conform their decisions to the tax code to the extent that they want that code to work for their benefit.

### III. The Industrial Machinery Credit

Tennessee offers tax credits for the purchase of industrial machinery that is located and used in this state. In an argument that follows its reasoning on the question of loss carryovers, the Department contends that we should deny those credits to Little Six, because Short Mountain was the original purchaser of the equipment in question.

Tenn. Code Ann. § 67-4-808 reads in pertinent part:

> (4)(A) On each excise tax return, a credit shall be allowed for a percentage of the purchase price of industrial machinery purchased during the tax period covered by the return and located in Tennessee . . . .
>
> . . .
>
> (C) Any unused credit incurred for fiscal years ending on or after March 15, 1982, may be carried forward in any tax period for fifteen (15) years or until such credit is taken.

We do not believe that the statute contains any language from which we can infer an intent to limit the use of the credit to the entity that was the original purchaser. Nor has the Department promulgated a rule for the industrial tax credits

analogous to its Revenue Rule 1320-6-1-.21(2)(d).  We therefore conclude that Little Six is entitled to the industrial machinery tax credits.

## IV.

The judgment of the trial court is reversed in part and affirmed in part. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion.  Tax the costs on appeal equally between the appellee and the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE